IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| TYWANNE M. ALDRIDGE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 06-1025-CV-W-NKL-P |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |
| ) | |

ORDER

Pending before the Court are Petitioner Tywanne M. Aldridge's ("Aldridge") Motion to Vacate Conviction and Sentence under 28 U.S.C. 2255 [Doc. # 1] and Motion to Conduct Limited Discovery under Rule 6(a) [Doc. # 2]. For the reasons set forth below, both motions are denied.

**I.  Background**

In 2000, Aldridge was charged with conspiracy to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 846, and possession of a weapon in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c). Prior to trial, two of his co-defendants who also happened to be his cousins, Monroe Lockhart and Preston Gardenhire, moved to sever their cases from Aldridge's. Aldridge claims that he also wanted to sever his trial and that he mistakenly thought his attorney had filed such a

1

motion on his behalf.  However, Aldridge's trial counsel has stated in an affidavit attached to the United States' opposition brief that he believed severance was unlikely and that trying the cases together would actually help Aldridge since his cousins made much less sympathetic defendants than Aldridge himself.  In any event, the Court denied Lockhart and Gardenhire's Motions to Sever and proceeded to trial with all three defendants.

At trial, Lockhard and Gardenhire invoked their Fifth Amendment right not to testify; however, because the United States had irrefutable taped evidence of Aldridge's involvement in the drug conspiracy, Aldridge's counsel argued an entrapment defense. As a result of these two strategic decisions by the defendants, the Court had to exclude all evidence of Lockhart and Gardenhire's prior bad acts under Fed. Rule of Evid. 404(b) while admitting evidence of Aldridge's prior bad acts since he'd put his propensity to commit crime at issue.  The chief witness for the United States was Chris McFarlane, the uncle of all three defendants.  When McFarlane testified that Aldridge had been a part of his drug distribution network, Aldridge's counsel attempted to impeach him with an FBI report written by agent Rick Young.  One section of Young's report indicated that McFarlane had not mentioned Aldridge when he was debriefed by the FBI about his drug distribution network but had mentioned Lockhart and Gardenhire.  In other sections of the Report, however, McFarlane did mention Aldridge's involvement in prior drug trafficking.  In any case, the Court denied Aldridge's counsel's use of that section of the

Report omitting Aldridge's name because its reference to the other two defendants was inadmissible character evidence against them under Rule 404(b).

At the conclusion of the trial, the jury convicted Aldridge on both counts and acquitted Lockhart and Gardenhire. The Court sentenced Aldridge to 157 months in prison. Aldridge appealed on several grounds, including the Court's evidentiary ruling denying his impeachment of McFarlane with Young's report. Although the Eighth Circuit remanded the case for resentencing under *U.S. v. Booker*, it upheld the Court's evidentiary decision. On remand, the Court sentenced Aldridge to the statutory minimum on both charges for a total of 120 months.

## II.    Discussion

Aldridge moves to vacate his sentence under 28 U.S.C. § 2255, alleging that his trial counsel was unconstitutionally ineffective by failing to file a motion to sever which resulted in the forfeiture of impeachment evidence that could have been introduced had the cases been tried individually. He also alleges that the statutory minimum sentences imposed by the Court violated his Fourth, Fifth, Sixth and Eighth Amendment rights and are inconsistent with the guidelines established in 18 U.S.C. § 3553(a). In addition, Aldridge moves for more time to conduct discovery with regard to his ineffective assistance of counsel argument.

### A.    Conducting Discovery

A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as matter of ordinary course. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).

3

The rules governing proceedings under 28 U.S.C. § 2255 provide that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." Habeas Corpus Rule 6(a). In order to show "good cause" under Rule 6(a), a petitioner must provide the Court with "specific allegations [that] show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908-909. "Mere speculation that some exculpatory material may have been withheld is unlikely to establish good cause for a discovery request on collateral review." *Strickler v. Greene*, 527 U.S. 263, 286 (1999).

Aldridge wants to depose his trial counsel and to see counsel's litigation file. He notes in a footnote, however, that he does not intend to issue a formal discovery request to obtain records from trial counsel "because such material was previously made available for review." Aldridge Memo. at 1 n. 1 [Doc. # 3]. Thus, it seems he primarily seeks the deposition to learn "what was communicated to Aldridge relating to critical aspects of trial," which occurred six years ago. Aldridge's trial counsel has already provided the Court with an affidavit speaking to his trial strategy and his decision not to move for severance. It is unclear what further information Aldridge hopes to discover from deposing his trial counsel, especially given that his stated objective is to learn what was communicated to him. Since he admits that trial counsel's records have previously been made available to him for review, there is no reason to think that counsel's memory of

4

what was communicated to Aldridge six years ago would be any better than Aldridge's own memory.

Moreover, the discovery request speaks only to the first prong of Aldridge's ineffective assistance claim, namely whether trial counsel's representation was so deficient as to fall below an objective standard of reasonable competence. *Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir. 1995). Aldridge has not explained what if any impact his discovery requests would have on the second prong of that analysis, namely that the deficient performance prejudiced his defense. *Id.* As will be explained in greater detail below, the Court concludes that Aldridge suffered no prejudice by his trial counsel's failure to move for severance. Thus, any deficiency in his counsel's representation is irrelevant. *See Pryor v. Norris*, 103 F.3d 710, 713 (8th Cir. 1997) ("[The Court] need not reach the performance prong if [it] determine[s] that the defendant suffered no prejudice from the alleged ineffectiveness.") As Aldridge has not shown "good cause" to believe that "if the facts are fully developed, [he would] be able to demonstrate that he is . . . entitled to relief," *Bracy*, 520 U.S. at 908-909, the Court denies his request to conduct discovery.

### B. Ineffective Assistance of Counsel

In order to succeed on a claim of ineffective assistance of counsel, the Supreme Court has held that a petitioner must demonstrate (1) that his counsel's performance was constitutionally deficient and (2) that the deficiency prejudiced the outcome of the trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the performance prong, the

5

petitioner must show that "trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence." *Nave*, 62 F.3d at 1035. Under the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

As an initial matter, "an ineffective assistance of counsel claim cannot be based on a decision relating to a reasoned choice of trial strategy, even when proved improvident." *Nave v. Delo*, 62 F.3d 1024, 1036 (8th Cir. 1995); *see also Strickland*, 466 U.S. at 690 ("strategic choices . . . are virtually unchallengeable"). Aldridge's trial counsel has submitted an affidavit to the Court that

> I considered a motion for severance in the early stages of my representation of Mr. Aldridge, but declined to do so. I thought an advantage could be gained by proceeding to trial with codefendants. Given his reliance on the defense of entrapment, I felt such a defense could persuasively distinguish Mr. Aldridge from the codefendants in the eyes of the jury. Additionally I did not think a request for severance would have been supported by the case law.

Moss Aff. [Doc. # 6-3]. Thus, Aldridge has a steep climb to premise his ineffective assistance claim on trial counsel's strategic decision not to move for severance. Indeed, the instant case presents an even less compelling case for ineffective assistance than *Nave*. In that case, defense counsel declined the trial court's *offer* to sever a capital murder count from other counts involving lesser crimes. Had he elected to do so, Nave

6

could have barred his wife from testifying under the then-existing statute governing spousal immunity. *Nave*, 62 F.3d at 1035. The court of appeals noted, however, that

> counsel's strategy was to present the defense of diminished capacity; to do this, it was necessary to present evidence that Nave had been drinking and was intoxicated when he committed the crimes. The only sources of evidence that Nave was intoxicated at the time the crimes were committed were Nave himself and Nave's wife. Faced with these alternatives, it was reasonable for counsel to call Nave's wife to testify in support of the defense theory. . . . Thus, it is clear that the decision to try the counts together and call Sherry Nave to the stand was a conscious, strategic decision.

*Id.* at 1035-1036. Concluding that "Nave's attorney was not constitutionally deficient for employing a strategy that was unsuccessful or that might not have been adopted by a different attorney," the Eighth Circuit explained that, "[h]ad counsel's strategy in this case proven effective, the jury might have acquitted Nave of some of the charges because it believed he lacked the intent necessary to commit the crimes. Hindsight now suggests that a different strategy might have been more effective, but this does not mean trial counsel was ineffective." *Id.* at 1036. As the Eighth Circuit has held that Nave's counsel was not ineffective by refusing the court's offer of severance, it is hard to see how Aldridge's counsel's failure to move for severance could be considered constitutionally deficient when two similar motions had already been denied.

However, even if the Court concluded that trial counsel's performance was deficient, Aldridge has the burden to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

7

reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Aldridge has not met this burden.

First, Aldridge has offered no persuasive argument that the Court would have ruled his motion to sever any differently than Lockhart's or Gardenhire's. *See United States v. Davidson*, 122 F.3d 531, 538 (8th Cir. 1997) (no prejudice where motion for severance would have been denied if filed). Nor has Aldridge shown a reasonable probability that the outcome of the trial would have been different had his case been severed. The crux of his argument is that trial counsel's decision to go forward with the other defendants undermined his entrapment defense. The chief witness for the prosecution, Aldridge's uncle, Chris McFarlane, testified as to Aldridge's involvement in his drug distribution ring. One paragraph in an FBI report by agent Rick Young, which Aldridge's counsel sought to introduce in order to impeach McFarlane, indicated that MacFarlane did not mention Aldridge in his description of the network during his FBI debriefing but had mentioned Lockhart and Gardenhire. The Court excluded the report under Fed. R. Evid. 404(b) because it contained evidence of Lockhart and Gardenhire's prior bad acts, an exclusion Aldridge argues would not have been necessary if the cases had been severed. Thus, failing to sever the cases deprived Aldridge of a piece of evidence he could have used to impeach McFarlane and, for that matter, FBI agent Rick Young.

The Eighth Circuit affirmed the Court's evidentiary ruling on direct appeal despite a Confrontation Clause objection. The Court of Appeals held that "[b]ecause the impeachment was so speculative, the inconsistency in the report was far from apparent,

and there was significant other evidence against Aldridge," excluding the report was proper. *United States v. Aldridge*, 413 F.3d 829, 835 (8th Cir. 2005). While the issue presented here is not a Confrontation Clause issue but one of severance, the outcome is no different. The government had Aldridge's voice on tape, setting up the drug deal. Although the paragraph with which Aldridge wanted to impeach McFarlane did not support McFarlane's testimony, neither did it contradict it. The paragraph was simply silent as to Aldridge's involvement and other sections of Young's report did contain information from McFarlane that Aldridge was involved in another drug transaction.

Moreover, as the Eighth Circuit noted, the Court did not exclude the entire report but only the paragraph including the names of the other defendants. *Id.* And Aldridge's counsel had other ways to impeach McFarlane beside the report; e.g., he could have asked McFarlane on cross-examination if the report accurately reflected Aldridge's involvement in the drug ring, could have called Agent Young to ask whether McFarlane had told him about Aldridge's involvement. *Id.* Again, these were likely strategic choices given that other portions of the report indicated that McFarlane had implicated Aldridge when he was debriefed by Young.

Finally, Aldridge cites a portion of the Order denying his motion for new trial in which the Court speculated that

> Aldridge's failure to file a pre-trial motion for severance, pursuant to Fed. R. Crim P. 12(b)(5) and 14, constitutes a lost opportunity which could have enabled Aldridge to bring in Special Agent Young's report unhindered by Rule 404(b) evidence against co-defendants Lockhart and Gardenhire. Nonetheless, Aldridge failed to request relief from potentially prejudicial

9

> joinder, thereby ignoring another possible avenue for impeaching
> McFarlane without facing the prohibited evidence.

May 31, 2001 Order at *5, Case No. 00-0060-01-CR-W-NKL.  While the Court's language, quoted in isolation, may have given Aldridge the false impression that a motion to sever would have been granted, there is nothing in that Order, the pending Motion, or elsewhere in the record or relevant case law to suggest that severance was appropriate. Far from chastening Aldridge's counsel for a mistake, the Court's post trial order was drawing attention to "another" among many "possible avenues for impeaching McFarlane *without facing the prohibited evidence,*" the ruling he was contesting in his motion.  The final phrase suggests that other means of impeachment were available but, like the "lost opportunity" of severance, were not pursued for strategic reasons.  Indeed, in the paragraph immediately preceding the one quoted in Aldridge's brief, the Court noted that "several opportunities existed to effectively discredit McFarlane's testimony, none of which required placing the Rule 404(b) evidence before the jury." *Id.* at *4.  For example,

> FBI Agent Richard Schoeberl, who was also present at McFarlane's
> debriefing, was available for cross-examination regarding McFarlane's
> statement concerning Aldridge's involvement in drug distribution.
> Additionally, McFarlane's cross-examination by all three defense attorneys
> allowed significant opportunities for impeachment.  McFarlane was
> questioned extensively about his plea agreement and his motives for
> testifying.  McFarlane was also questioned in detail about his past
> involvement in drugs and drug distribution.

*Id.* at *4-5.  As the rest of the Order makes clear, the Court was not offering an advisory opinion that severance would have been granted, but merely pointing out that all trials involve strategic choices, some of which look worse in hindsight.  That is not the same as

10

prejudice. Given the taped evidence of Aldridge's involvement, the testimony of his uncle against him, and the references to Aldridge's prior involvement in McFarlane's drug ring outside the portions of the report excluded under Rule 404(b), the Court concludes that there is no reasonable probability that the outcome of the trial would have been different even if Aldridge's case had been severed. Without a showing of prejudice, Aldridge cannot establish ineffective assistance of counsel.

## C.     Unconstitutional Sentence

In his 2255 Motion, Aldridge raises objections to the imposition of the mandatory minimum sentences under the Fourth, Fifth, Sixth and Eighth Amendments to the Constitution, as well as 18 U.S.C. § 3553(a). As the United States' notes in its Response, and Aldridge does not dispute in his Reply, none of these objections was raised on direct appeal. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal citations omitted). Aldridge offers no cause for failing to raise these issues on direct appeal; nor does he make any claim of actual innocence. Indeed, he makes no argument in his Reply at all related to his second ground for relief, apparently conceding the procedural default. The Court concludes that the arguments are procedurally defaulted and therefore denies habeas relief.

## III.    Conclusion

Accordingly, it is hereby

ORDERED that Petitioner's Motions to Vacate Conviction and Sentence under 28 U.S.C. § 2255 [Doc. # 1] and to Conduct Limited Discovery [Doc. # 2] are DENIED.

 s/ NANETTE K. LAUGHREY  
NANETTE K. LAUGHREY  
United States District Judge

Dated: May 1, 2007  
Jefferson City, Missouri

12

Case 4:06-cv-01025-NKL   Document 12   Filed 05/01/07   Page 12 of 12